McCABE, Appellant, *v.* MONTANA CENTRAL RAILWAY COMPANY, Respondent.

(No. 1,822.)

(Submitted March 21, 1904. Decided May 6, 1904.)

*Master and Servant—Safe Place to Work—Railroad Employes —Negligence — Contributory Negligence — Assumption of Risk—Questions for Jury—Trial—Nonsuit—Presumptions —Directed Verdicts.*

1. It is the duty of an employer to use all reasonable care, considered in relation to the kind of business, to provide a safe place in which the employe may perform his service.
2. A railroad employe engaged in switching is entitled to rely on the presumption that the railroad has properly constructed its line and appliances.
3. On motion for a nonsuit, every fact will be deemed proved which the evidence tends to prove.
4. The fact that a railroad employe went in and out of the yards in which he was employed during a period of three months, and that immediately before the accident he threw switches, was not conclusive on the question of notice to him of the proximity of the switch stand to the track.
5. A railroad is not an insurer of the safety of its employes, but is required only to exercise all reasonable care to provide and maintain safe, sound and suitable machinery, roadway structures and instrumentalities.
6. Where a railroad negligently maintained a switch stand so near its track as to imperil the safety of its employes, and an injured employe testified that he did not know of such dangerous proximity, and had never thrown the switch prior to the day of the accident, and up to that day had never done any switching in the portion of the yard in which such switch stand stood, it could not be said, as a matter of law, that he was guilty of contributory negligence in attempting to mount an engine near the switch.
7. Where a servant assumes the risk, the question of his contributory negligence is immaterial.

8. While the occupation of a freight brakeman is a perilous one, and those who engage in it must be held to have anticipated its dangers, and to have assumed the risks ordinarily incident thereto, yet they assume only the ordinary risks of the employment, and not extraordinary ones, unless they are aware of such at the time of their employment, or, on learning of their existence, they continue in the employment after the lapse of a reasonable time for the defects to be remedied or removed.

9. Whether a freight brakeman engaged in switching, and who was injured while mounting an engine by coming in contact with a switch stand placed near the track, knew or should have known of the dangerous proximity of such switch stand to the track, so as to have assumed the risk of injury therefrom, *held*, under the evidence, a question for the jury.

10. No case should be withdrawn from the jury unless the conclusion necessarily follows from the facts as a matter of law that no recovery could be had on any view which could reasonably be drawn from the facts which the evidence tends to establish.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

Action by Joseph D. McCabe against the Montana Central Railway Company. From a judgment of nonsuit, and from an order denying a new trial, plaintiff appeals. Reversed.

*Mr. F. D. Larrabee,* and *Messrs. Downing & Stevenson,* for Appellant.

That defendant was negligent, or at least that it was a question for the jury to say whether or not the defendant was negligent under the circumstances proved in this case, is established to a certainty by the courts of last resort of all the states. Alabama—*Ry.* v. *Davis,* 92 Ala. 300; *Ry.* v. *Thompson,* 94 Ala. 636; *Ry.* v. *Burton,* 12 So. Rep. 88; *Ry.* v. *Bouldin,* 25 So. Rep. 903. Colorado—*Wilson* v. *Ry.,* 2 Pac. p. 1. Dakota —*Boss* v. *Ry.,* 5 Dak. 308. Illinois—*Ry.* v. *Welch,* 52 Ill. 183; *Ry* v. *Greg,* 58 Ill. 272; *Ry.* v. *Russell,* 91 Ill. 298; *Ry.* v. *Whalen,* 19 Ill. App. 116. Indiana—*Penn. Co.* v. *McCormack,* 30 N. E. 27. Iowa—*Allen* v. *Ry.,* 57 Iowa, 623; *Kearns* v. *Ry.,* 66 Iowa, 599; *Bryce* v. *Ry.,* 103 Iowa, 665; *Keist* v. *Ry.,* 110 Iowa, 32. Kansas—*Ry.* v. *Irwin,* 37 Kan. 701; *Ry.* v. *Michaels,* 57 Kan. 474. Kentucky—*Nance* v. *Ry.,* 17 S. W. 570; *Ry.* v. *Pyle,* 18 S. W. 938; *Hughes* v. *Ry.,* 48 S. W. 671. Louisiana—*Erslew* v. *Ry.,* 49 La. Ann. 86. Maine—*Nugent*

v. *Ry.*, 80 Me. 62.  Maryland—*Ry.* v. *Russel*, 88 Md. 563.
Massachusetts—*Holden* v. *Ry.*, 129 Mass. 268; *Scanlon* v. *Ry.*,
147 Mass. 484; *Babcock* v. *Ry.*, 150 Mass. 467.  Michigan—
*Sweet* v. *Ry.*, 87 Mich. 559.  Minnesota—*Clark* v. *Ry.*, 28
Minn. 128; *Robel* v. *Ry.*, 35 Minn. 84; *Johnson* v. *Ry.*, 43
Minn. 53; *Flanders* v. *Ry.*, 51 Minn. 193.  Mississippi—*Ry.*
v. *Bishop*, 25 So. Rep. 867.  Missouri—*Murphy* v. *Ry.*, 115
Mo. 111.  Montana—*Kelley* v. *Co.*, 16 Mont. 484.  North
Carolina—*Brinkey* v. *Ry.*, 107 N. Car. 731.  New York—
*Fredenburg* v. *Ry.*, 114 N. Y. 582.  Oregon—*Johnson* v. *Ry.*,
23 Ore. 94.  Rhode Island—*Whipple* v. *Ry.*, 35 Atl. 305.  South
Dakota—*Gates* v. *Ry.*, 2 S. D. 422.  Texas—*B. & E.* v. *La
None*, 80 Texas, 117; *Ry.* v. *Graves*, 21 S. W. 606; *Ry.* v.
*Hohn*, 21 S. W. 942; *Ry.* v. *Taylor*, 53 S. W. 362.  Utah—
*Piddock* v. *Ry.*, 5 Utah, 612.  United States—*Cent. Trust Co.*
v. *Ry.*, 73 Fed. 661; *Wood* v. *Ry.*, 88 Fed. 44.  West Virginia
—*Riley* v. *Ry.*, 27 W. Va. 145.  Wisconsin—*Dorsey* v. *Ry.*,
42 Wis. 583; *Hulehan* v. *Ry.*, 58 Wis. 319; *Kelleher* v. *Ry.*,
80 Wis. 584; *Colf* v. *Ry.*, 87 Wis. 273.  Miscellaneous—22 A.
E. Ry. Cases, 245, note; 48 A. E. Ry. Cases, 168, note.

Contributory negligence and assumption of risk, which is but
a species of contributory negligence, is a matter of defense, and
the burden of proving it rests upon the defendant, and the plain-
tiff in his pleading need not negative the facts.  (*Thompson* v.
*Ry.*, 72 N. W. 962; *Higley* v. *Gilmer*, 3 Mont. 90; *Prosser* v.
*Ry.*, 17 Mont. 372; *McGee* v. *Ry.*, 78 Cal. 430, 21 Pac. 114;
*Ry.* v. *Heines*, 132 Ill. 161; *Hulehan* v. *Co.*, 68 Wis. 520;
*Wells* v. *Ry.*, 56 Iowa, 520, see page 525; 5 Pleading & Pr. 1
*et seq.;* 14 Am. & Eng. Ency. of Law, 844; 38 Am. & Eng. Ry.
Cases, note, 176.)

It is the master's duty to furnish a safe place for his servants
to work, and the plaintiff may assume that the place furnished
him is a safe place.  (*McDonald* v. *Co.*, 46 Atl. 707; *Kincaid*
v. *Ry.*, 22 Ore. 35; *Co.* v. *Yockey*, 103 Fed. 265; *Ry.* v. *Heines*,
132 Ill. 161; *Sil.* v. *Sov.*, 128 Cal. 187; *Co.* v. *Ry.*, 126 Ind.
445; *Porter* v. *Ry.*, 60 Mo. 160; *Morton* v. *Ry.*, 81 Mich. 423;

*Ry.* v. *Ayl.,* 79 Texas, 675; *Ry.* v. *Barsolow,* 55 Ill. App. 203; *Ry.* v. *Smith,* 57 S. W. 999; *Grannis* v. *Ry.,* 81 Iowa, 444; *Co.* v. *Moran,* 44 Md. 283; *Co.* v. *Irwin,* 37 Kan. 701; *Higgins* v. *Co.,* 43 Mo. App. 547; *Ry.* v. *Col.,* 33 Mich. 133; *Kan.* v. *Smith,* 89 N. Y. 375.)

Prior to the time that the plaintiff was injured he had never thrown switch number 2 but once, and plaintiff was doing his work in the customary way, and when doing it in the customary way it cannot be said as a matter of law that he was guilty of contributory negligence. (*Prosser* v. *Ry.,* 17 Mont. 372; *Nelson* v. *Carpenter,* 56 Fed. 451; *Nelson* v. *Ry.,* 14 Am. & Eng. Ry. Cases (New Series), 374; *Pierre* v. *Ry.,* 5 Am. & Eng. Ry. Cases (New Series), 407; *Ry.* v. *Sutherland,* 143 Ill. 48; *Ry.* v. *McCormack,* 30 N. E. 27; *Omelia* v. *Ry.,* 115 Mo. 205; *Thitsell* v. *Ry.,* 67 Iowa, 150; *Flanders* v. *Ry.,* 51 Minn. 193, and cases cited.)

The plaintiff denied actual knowledge of the dangerous location of the switch stand and there is no testimony to the contrary, and that his opportunities, as shown from the evidence, were insufficient, from which it can be held as a matter of law that he had constructive knowledge is conclusively shown by the following cases: *Johnson* v. *Ry. Co.,* 43 Minn. 53; *Central Trust Co.* v. *Ry. Co.,* 73 Fed. 661; *Wood* v. *Ry. Co.,* 88 Fed. 44; *Dorsey* v. *Ry. Co.,* 42 Wis. 583; *Colf* v. *Ry. Co.,* 87 Wis. 273; *Sweet* v. *Ry. Co.,* 87 Mich. 559; *Ry. Co.* v. *Michaels,* 57 Kan. 474; *Ry. Co.* v. *Thompson,* 94 Ala. 636; *Errlew* v. *Ry. Co.,* 49 La. Ann. 86; *Ry. Co.* v. *Welch,* 52 Ill. 183; *Brinkley* v. *Ry. Co.,* 107 N. C. 731; *Nanse* v. *Ry.,* 17 S. W. 570; *Hughes* v. *Ry.,* 48 S. W. 671; *Babcock* v. *Ry.,* 150 Mass. 467; *Scanlon* v. *Ry.,* 147 Mass. 484; *Keist* v. *Ry.,* 110 Iowa, 32; *Bryce* v. *Ry.,* 103 Iowa, 665; *Pa. Co.* v. *McCormick,* 30 N. E. 27; *Ry.* v. *Russell,* 88 Md. 563; *Nugent* v. *Ry.,* 80 Me. 62; *Murphy* v. *Ry. Co.,* 115 Mo. 111; *Whipple* v. *Ry. Co.,* 35 Atl. 305; *B. & F.* v. *La None,* 80 Texas, 117; *Ry. Co.* v. *Taylor,* 53 S. W. 362; *Piddock* v. *Ry. Co.,* 5 Utah, 612; *Willson* v. *Ry. Co.,* 2 Pac. 1; *Johnson* v. *Ry. Co.,* 23 Ore. 94; *Voorhees*

v. *Ry. Co.*, 44 Atl. 335; *Keist* v. *Ry. Co.*, 81 N. W. 181; *Ry. Co.* v. *Morrisy*, 117 Ill. 376; *Ry.* v. *Bundy*, 53 N. E. 175; *Ry.* v. *Peterson*, 6 Am. Neg. Rep. 225; *Ry.* v. *Vesta*, 49 S. W. 204; *Harding* v. *Ry.*, 83 N. W. 395.

Where a rule of the company imposes upon an employe the duty of inspection in the using of appliances, it does not change the common-law rule, and only requires the plaintiff to use such ordinary care to ascertain defects as is consistent with his other duties. (*Railway Co.* v. *Graham*, 94 Ala. 545; *Ry. Co.* v. *Fry*, 131 Ind. 319; *O'Malley* v. *Ry.*, 67 Hun. 130, 51 N. Y. S. R. 67, 22 N. Y. Supp. 48, affirmed in 142 N. Y. 665; *Ry. Co.* v. *Carroll*, 84 Fed. 772.)

*Mr. I. Parker Veazey*, for Respondent.

Citing in opposition to the contentions of the appellant: *Tuttle* v. *Ry. Co.*, 122 U. S. 189; *Sisco* v. *Ry. Co.*, 145 N. Y. 296, 39 N. E. 958; *Brown* v. *R. R. Co.*, 59 N. Y. 672; *Davis* v. *R. Co.*, 21 S. C. 93; *Allen* v. *Ry. Co.*, 19 N. W. 870; *Gould* v. *R. Co.*, 24 N. W. 227; *Heath* v. *Whitebreast, etc. Co.*, 23 N. W. 148; *Randall* v. *R. Co.*, 109 U. S. 478; *Cummings* v. *H. & L. S. & R. Co.*, 68 Pac. 852; 1 Bailey Per. Inj. Sec. 1121; *Highland Ave. & D. R. Co.* v. *Walters*, 8 So. 360; *Central Ry.* v. *Mosley*, 38 S. E. 350; *Morris* v. *Duluth Ry. Co.*, 108 Fed. 747; *Chicago, etc. Ry. Co.* v. *Davis*, 53 Fed. 61; *Richmond, etc. R. Co.* v. *Bivins*, 15 So. 515; *George* v. *Mobile, etc. R. Co.*, 19 So. 784; *Davis* v. *Western Ry.*, 18 So. 173; *Ferguson* v. *Chicago, etc. Ry. Co.*, 59 N. W. 1026; *Union Pac. Ry. Co.* v. *Estes*, 16 Pac. 140; *Carrier* v. *Union Pac. Ry. Co.*, 59 Pac. 1075; *Quirouet* v. *Ala. etc. R. Co.*, 36 S. E. 599; *Fritz* v. *Salt Lake, etc. Co.*, 56 Pac. 93; *Jenkins* v. *Cotton Mills*, 25 So. 645; *Linton, etc. Co.* v. *Persons*, 43 N. E. 653; Bailey's Master's Liability, p. 191; *Ragon* v. *Toledo, etc. Co.*, 56 N. W. 612; *Helmke* v. *Thilmany*, 83 N. W. 360; *Dillenberger* v. *Weingartner*, 45 Atl. 638; Bailey, Master's Liability, Sec. 509; *Texas, etc. R. Co.* v. *Taylor*, 44 S. W. 893; Wharton on Neg. Sec. 314; *Muldowney* v. *Ry. Co.*, 39 Iowa, 620; *McKee* v. *Ry.*

*Co.*, 50 N. W. 211; *Ry. Co. v. Brown*, 43 N. E. 362; *Way v. Ill. Cen. R. Co.*, 40 Iowa, 343; *Goldthwaite v. Ry. Co.*, 36 N. E. 486; *Richards v. Rough*, 53 Mich. 213; *Hayden v. Smithville Mfg. Co.*, 29 Conn. 558; *Coombs v. Fitchburg Ry. Co.*, 30 N. E. 1140; *Goodes v. Boston, etc. R. Co.*, 38 N. E. 500; *Pahlan v. Detroit Ry. Co.*, 81 N. W. 103; *De Forrest v. Jewett*, 88 N. Y. 268; *Gibson v. Erie Ry. Co.*, 63 N. Y. 449; *Lyon v. Canada So. Ry. Co.*, 10 Ontario, 745; 26 Am. & Eng. R. Cas., 345; *Dacey v. N. Y. etc. R. Co.*, 47 N. E. 418; *Bell v. Ry. Co.*, 47 N. E. 118; *Thane v. Old Colony R. Co.*, 37 N. E. 309; *Ferren v. R. Co.*, 143 Mass. 197, 200; *Skidmore v. Ry. Co.*, 61 N. W. 765; *Boyd v. Harris*, 35 Atl. 222; *Chicago, etc. R. Co. v. McGinnis*, 68 N. W. 1057; *New York, etc. Co. v. Ostman*, 45 N. E. 651; *Wilson v. Louisville, etc. R. Co.*, 4 So. 701; *Brown v. Chicago, etc. Ry. Co.*, 28 N. W. 487; *Mays v. Chicago, etc. Ry. Co.*, 19 N. W. 680; *Pennsylvania Co. v. Finney*, 42 N. E. 816; *Coal Co. v. Hoodlet*, 129 Ind. 327; *East Tenn. etc. Ry. Co. v. Head*, 18 S. E. 976; *Wolf v. Ry. Co.*, 14 S. E. 199; *Sundy v. Savannah, etc. R. Co.*, 23 S. E. 841; *Lovejoy v. Boston, etc. R. Co.*, 125 Mass. 79; *Ladd v. New Bedford R. Co.*, 119 Mass. 412; *Hall v. Wakefield St. Ry. Co.*, 59 N. E. 668; *Blackstone v. Central Ry. Co.*, 38 S. E. 79; *Kelly v. Baltimore, etc. R. Co.*, 11 Atl. 659.

MR. COMMISSIONER CALLAWAY prepared the following opinion for the court:

Appeal from a judgment of nonsuit and from an order denying plaintiff's motion for a new trial.

The plaintiff brought this action to recover damages for injuries sustained by him in defendant's railway yards in Great Falls, caused, as he alleges, by defendant's negligence in constructing and maintaining a switch stand so near its railway track that plaintiff, in the performance of duty, was struck thereby as he attempted to mount a moving engine, and, falling thereunder, was run over, resulting in the loss of his left leg a few inches above the knee.

A somewhat extended statement of the existing conditions seems to be necessary. In the north end of the freight yard, where the accident occurred, the tracks run northerly and southerly. The easterly one is called the "house track." Adjacent to the house track on the west is the lead track, which is somewhat in the form of an arc of a circle. Other tracks connect with the lead track at the northerly and southerly portions thereof, and each in appearance, taken in conjunction with the lead track, is not unlike the string to a bow. The first track west of the lead track is called "No. 7," the next west "No. 6," and so on, there being seven of these connecting tracks. Where each of the tracks connects with the lead track at the northerly end there is a switch stand, which is numbered to correspond with the connecting track. Thus the northerly switch stand is No. 1, and the next to it is No. 2. The distance between No. 1 and No. 2 is 185 feet. The seven switch stands are similar, and are the same distance from the lead track, but plaintiff testified that he did not know this until after the accident. On the top of each is what the witnesses call a "target," and this is surmounted by two prongs, upon which lights are placed at night. It is forty-five inches from the center of switch stand No. 2 to the easterly rail of the lead track when the target is parallel with the track; but when the switch is turned so that cars may pass from the lead track to track No. 2 the target is at a right angle with the tracks, and it is then but forty inches from the target to the easterly rail of the lead track. At the time the measurements were taken, which was a day or two prior to the trial, the distances between the switch stands and the track were the same as they had been for the two years immediately preceding, and this would include the time in which plaintiff worked for the defendant in the year 1899.

The testimony discloses that the steps on an engine similar to the one in use at the time of the accident project over the track a distance of thirty inches, and the space between the engine and the switch stand, the target being at a right angle with the track, when the engine is backing in on track No. 2,

is about ten inches. Prior to the accident, which occurred December 13, 1899, plaintiff had been in defendant's employ as head brakeman on a freight train for nearly three months. About a year before he had been in defendant's employ for a few months, serving as helper in the boiler shop, hostler's helper, and fireman on a switch engine; but in none of these capacities did he ever do any switching in that portion of the yard where he was afterwards injured. While in the discharge of his duties as brakeman, plaintiff became familiar with the railroad yards at Havre, Helena, Clancy, Belt Mine, Sand Coulee and Neihart. In all of these places he did considerable switching, and in all of those yards he had ridden on the sides of engines and cars past the switch stands, and was never interfered with by the switch stands nor targets thereon in any way. Throughout defendant's entire system, save in the northerly portion of the Great Falls yards, it appears that the switch stands are about six feet from the track. There are eighteen switches in the Great Falls yards and all are about six feet from the track, save the seven mentioned. Plaintiff testified that he did not know until after the accident that the seven were any closer to the track than are the others on the system. Plaintiff testified that he had never done any switching in the north end of the Great Falls yards prior to the morning in question. While plaintiff was in the employment of the defendant as head brakeman, the train started from different places in the yards. In coming into the yard plaintiff never had to throw any switches, but did throw switches in different parts of the yard upon going out. It was his duty to couple the engine and tender on every train that was taken out on which he worked as brakeman, but there were exceptions to that rule.

The defendant pleaded that the plaintiff was guilty of contributory negligence, and that he had assumed the risk of the employment. In order to determine whether the plaintiff was guilty of such contributory negligence as will defeat his action, it becomes necessary to look to the situation of the defendant and plaintiff—the master and servant—at the time of the acci-

dent. On the afternoon of the day on which plaintiff was hurt he was summoned to take out a train. Going to the yards he found the train he was to take out standing on track No. 2. No engine was as yet attached. Engine No. 500, which had been assigned to the train, was on track No. 1. Another engine, by mistake, had been let in on track No. 2. Plaintiff went to switch stand No. 2, and threw it to let the engine on that track come to the lead track, so that engine No. 500 could move to track No. 2. This was the only occasion upon which he ever threw switch No. 2. He then went to switch stand No. 1, and threw that to allow engine No. 500 to go from track No. 1 to the lead track, which it immediately did. In the meantime the conductor had again thrown switch No. 2 to allow this engine, No. 500, to go to the train standing on track No. 2. It was then standing about thirty feet north of switch No. 1. Plaintiff started to walk to switch No. 2. At one place in the testimony plaintiff says he walked toward switch No. 2 with the intention of turning it. On cross-examination he testified that he could have safely discharged his duty and have ridden to the train made up on track No. 2 by getting onto the engine near switch No. 1, and said that he walked towards switch No. 2 leisurely until the engine caught up with him; that there was no purpose in doing so except to put in the time while the engine was going along. When about twenty feet from switch stand No. 2, the engine, traveling about five or six miles an hour, caught up with him, and he then mounted it by getting upon the steps, but before he had fully straightened up his body came in contact with the prongs and target upon switch stand No. 2. He was knocked from the engine, which ran over his left leg. The witnesses testified that it is customary for employes in a railway yard to mount an engine when it is not going faster than six miles an hour.

One ground urged by defendant's counsel in his motion for a nonsuit is: "Because it appears from the plaintiff's proof that the duties which he was seeking to perform at the time of the accident complained of could have been performed safely

and without injury or danger to him, but he voluntarily and unnecessarily chose a dangerous method of performing these duties, and unnecessarily placed himself in a position of known peril, thereby negligently contributing to the injury for which he now seeks damages from the defendant." In his brief counsel urges this position with great force, and cites the following authorities in his support: *Cummings* v. *Helena & Livingston S. & R. Co.,* 26 Mont. 434, 68 Pac. 852; 1 Bailey's Personal Injuries, Sec. 1121; *Highland Ave. & B. R. Co.* v. *Walters,* 91 Ala. 435, 8 South. 360; *Central of Ga. Ry. Co.* v. *Mosley,* 112 Ga. 914, 38 S. E. 350; *Morris* v. *Duluth, S. S. & A. Ry. Co.,* 108 Fed. 747, 47 C. C. A. 661; *Chicago & Northwestern Ry. Co.* v. *Davis,* 53 Fed. 61, 3 C. C. A. 429; *Richmond & D. R. Co.* v. *Bivins,* 103 Ala. 142, 15 South. 515; *George* v. *Mobile & O. R. Co.,* 109 Ala. 245, 19 South. 784; *Davis* v. *Western Ry. of Alabama,* 107 Ala. 626, 18 South. 173; *Ferguson* v. *Chicago, M. & St. P. Ry. Co.,* 100 Iowa, 733, 69 N. W. 1026; *Union Pac. Ry. Co.* v. *Estes,* 37 Kan. 715, 16 Pac. 131; *Carrier* v. *Union Pac. Ry. Co.,* 61 Kan. 447, 59 Pac. 1075; *Quirouet* v. *Alabama G. S. R. R. Co.,* 111 Ga. 315, 36 S. E. 599; *Fritz* v. *Salt Lake & O. G. & E. L. Co.,* 18 Utah, 493, 56 Pac. 90; *Jenkins* v. *Maginnis Cotton Mills,* 51 La. Ann. 1011, 25 South. 645.

There can be no question as to the correctness of the legal proposition upon which counsel relies, but is it applicable to the facts in this case? That the duties plaintiff was seeking to perform could have been performed safely and without injury to him is conceded, but did he voluntarily or unnecessarily place himself in a position of known peril? Did he know, or ought he to have known, that the way he adopted was unsafe? Did he know, or ought he to have known, that the switch stand was but forty inches from the track? The testimony discloses that the switch stands at all other places upon defendant's system were about six feet from the track, and plaintiff had frequently ridden past them without injury on the sides of cars and engines.

It is the duty of the employer to use all reasonable care to provide a safe place in which the employe may perform his service (*Kelley* v. *Fourth of July M. Co.,* 16 Mont. 484, 41 Pac. 273); that is, reasonable care considered in relation to the kind of business in which he is engaged (*Kelley* v. *Cable Co.,* 8 Mont. 440, 20 Pac. 669). In the case of *Pikesville, etc. R. Co.* v. *Russell,* 88 Md. 563, 42 Atl. 214, the court said: "It is the duty of the master to exercise all reasonable care to provide and maintain safe, sound and suitable machinery, roadway, structures and instrumentalities; and he must not expose his employes to risks beyond those which are incident to the employment, and were in contemplation at the time of the contract of service; and the servant or employe has a right to presume that the master has discharged these duties. *Stricker's Case,* 51 Md. 47, 34 Am. Rep. 291; *Baker's Case,* 84 Md. 21, 35 Atl. 10; 3 Elliott on Railways, Secs. 1288 to 1291, and authorities cited." And see *Berg* v. *B. & M. Con. C. & S. M. Co.,* 12 Mont. 212, 29 Pac. 545; *Ill. Cent. R. R. Co.* v. *Welch,* 52 Ill. 183, 4 Am. Rep. 593; *Georgia Pacific Railway Co.* v. *Davis,* 92 Ala. 300, 9 South. 252, 25 Am. St. Rep. 47; *St. Louis, Ft. Scott & Wichita R. R. Co.* v. *Irwin,* 37 Kan. 701, 16 Pac. 146, 1 Am. St. Rep. 266; *Bryce* v. *Chicago, M. & St. P. Ry. Co.,* 103 Iowa, 665, 72 N. W. 780.

Mr. Justice De Witt, in *Prosser* v. *Montana Central Railway Co.,* 17 Mont. 372, 43 Pac. 81, 30 L. R. A. 814, states the tenor of the authorities to be "that, if the question of negligence or contributory negligence is a fairly disputed question of fact, it must be resolved by the jury, but that, if the evidence is perfectly clear, the matter is for the court; and by 'perfectly clear,' the authorities say, is meant not perfectly clear in the view of the particular court or persons composing the court which is reviewing the matter, but rather in the judgment of reasonable men of sound minds. That is, if different conclusions might be drawn by different men of fair, sound minds, then the matter must go to the jury; but, if only one conclusion can be reached by men of fair, sound minds, the determination is for the court."

(*Berg* v. *Boston & Montana Con. C. & S. M. Co., supra; Sweeney* v. *City of Butte,* 15 Mont. 274, 39 Pac. 286; *Nord* v. *Boston & Montana Con. C. & S. M. Co.,* 30 Mont. 48, 75 Pac. 681.)

As to whether the plaintiff knew, or reasonably should have known, that he was adopting a dangerous course in mounting the engine when and where he did is a question upon which men of fair, sound minds may differ. Plaintiff was entitled to rely upon the presumption that the defendant had properly constructed its railway line and appliances. However, he was somewhat familiar with the Great Falls yards, as the facts herein recited show, and "what a man in law ought, by the exercise of reasonable diligence, to know, he does know" (*Bryce* v. *C., M. & St. P. Ry. Co.,* 103 Iowa, 665, 72 N. W. 780); but to what extent was he familiar with the switch stand in question? Ought he, by the exercise of reasonable diligence, to have known its location and proximity to the track? He testified that he did not know the distance the seven switch stands were from the track; that he never threw switch stand No. 2 before the afternoon upon which he was hurt, and then threw it but once.

Throughout this inquiry it must be borne in mind that on a motion for a nonsuit every fact will be deemed proved which the evidence tends to prove. Such has always been the rule of practice in this court. (*Herbert* v. *King,* 1 Mont. 475; *Gans* v. *Woolfolk,* 2 Mont. 463; *McKay* v. *Montana Union Ry. Co.,* 13 Mont. 15, 31 Pac. 999; *Creek* v. *McManus,* 13 Mont. 152, 32 Pac. 675; *State ex rel. Pigott* v. *Benton,* 13 Mont. 306, 34 Pac. 301; *Mayer* v. *Carothers,* 14 Mont. 274, 36 Pac. 182; *Soyer* v. *Great Falls Water Co.,* 15 Mont. 1, 37 Pac. 838; *Powers* v. *Klenzie,* 15 Mont. 177, 38 Pac. 833; *Jensen* v. *Barbour,* 15 Mont. 582, 39 Pac. 609; *Emerson* v. *Eldorado Ditch Co.,* 18 Mont. 247, 44 Pac. 969; *Holter Lumber Co.* v. *Fireman's Fund Ins. Co.,* 18 Mont. 282, 45 Pac. 207; *State ex rel. Harmon* v. *Conrow,* 19 Mont. 104, 35 Pac. 240; *Morse* v. *Granite County Commissioners,* 19 Mont. 450, 47 Pac. 639; *Cameron* v. *Kenyon-Connell Commercial Co.,* 22 Mont. 312, 56 Pac.

358, 44 L. R. A. 508, 74 Am. St. Rep. 602; *Cummings* v.
*Helena & Livingston S. & R. Co.,* 26 Mont. 434, 68 Pac. 852;
*Cain* v. *Gold Mtn. Mg. Co.,* 27 Mont. 529, 71 Pac. 1004;
*Coleman* v. *Perry,* 28 Mont. 1, 72 Pac. 42; *Ball* v. *Gussen-
hoven,* 29 Mont. 321, 74 Pac. 871; *Nord* v. *Boston & Montana
Con. C. & S. M. Co.,* 30 Mont. 48, 75 Pac. 681.)

Counsel for defendant argues that plaintiff, in going into
and out of this portion of the Great Falls yards during a period
of three months, must have noticed the proximity of these switch
stands to the lead track, and especially must have done so at
the two times he threw them immediately prior to the accident.
This is not conclusive. As the court remarked in the case of
*Southern Kan. Railway Co.* v. *Michaels,* 57 Kan. 474, 46 Pac.
938: "In *Rouse* v. *Ledbetter,* 56 Kan. 348, 43 Pac. 249, an
injury to a switchman resulted from a defective structure in
the yard, and one that he might have seen by the reasonable
use of his eyesight. It was held, however, that the fact that
he was working in that part of the yard, and might have seen
it if his attention had been called to it, was not conclusive evi-
dence of contributory negligence. It was said: 'The faculty
of close observation of objects is largely a gift. Some persons
may walk once along a street, and be able, without any special
effort, to describe every prominent object upon and every pro-
jection into the street, while others might go up and down the
same street for a year, who could not describe such objects and
projections. * * * Many dangers necessarily attend the
performance of the duties of a yard switchman, but the master
is not allowed to increase the hazards of his servant by placing
pitfalls, obstructions, traps or inclines in his path, whereby he
may lose his footing, and be mangled or killed.' " (*Dorsey* v.
*Phillips, etc. Construction Co.,* 42 Wis. 583.)

A railroad company is not an insurer of the safety of its
employes. All the law demands it to do is to "exercise all rea-
sonable care to provide and maintain safe, sound and suitable
machinery, roadway, structures and instrumentalities." Whether
it did so in this instance we are unable to say. The defendant's

side of the case is not before us. From the plaintiff's showing we should say it did not. He proved, *prima facie*, that the defendant negligently maintained a switch stand so near its track as to imperil the safety of its employes. In the face of affirmative testimony to the effect that plaintiff did not know the dangerous proximity of switch stand No. 2 to the track, had never thrown it prior to the day of the accident, and prior to that day had never done any switching in that portion of the yard, it cannot be said, as a matter of law, that the plaintiff was guilty of contributory negligence. Thus we do not say that the plaintiff was negligent; neither do we say that he was not negligent; but we do say, upon the record presented, that the question of his negligence is one of fact, which should be submitted to the jury for its determination. (*Wastl* v. *Montana Union Ry. Co.*, 24 Mont. 159, 61 Pac. 9; *Piddock* v. *Union Pac. Railway Co.*, 5 Utah, 612, 19 Pac. 191, 1 L. R. A. 131; *Sweet* v. *Mich. Cent. R. R. Co.*, 87 Mich. 559, 49 N. W. 882; *Keist* v. *Chic. G. W. R. R. Co.*, 110 Iowa, 32, 81 N. W. 181; *Babcock* v. *Old Colony R. R. Co.*, 150 Mass. 467, 23 N. E. 325; *Hollenbeck* v. *Mo. Pac. Ry. Co.*, 141 Mo. 97, 38 S. W. 723, 41 S. W. 887; *Johnston* v. *Oregon S. L. Ry. Co.*, 23 Ore. 94, 31 Pac. 283; *Boss* v. *Northern Pac. R. R. Co.*, 5 Dak 308, 40 N. W. 590; *North Chicago St. R. R. Co.* v. *Dudgeon*, 184 Ill. 477, 56 N. E. 796; *Vorhees* v. *Lake Shore & M. S. Ry. Co.*, 193 Pa. St. 115, 44 Atl. 335; *Whitcher* v. *Boston & M. R. R. Co.*, 70 N. H. 242, 46 Atl. 740; *Peirce* v. *Clavin,* 82 Fed. 550, 27 C. C. A. 227; *Hennessy* v. *Bingham*, 125 Cal. 627, 58 Pac. 200.)

As to the question of assumed risk. Of course, if plaintiff assumed the risk, the question of his contributory negligence is out of the way. (*Ball* v. *Gussenhoven*, 29 Mont. 321, 74 Pac. 871.) The occupation of a freight brakeman is a perilous one at best, and those who engage in it must be held to have voluntarily gone into it anticipating its dangers, but only the dangers which one may ordinarily encounter in the nature of the calling. The authorities hold that the plaintiff is to be held

as having assumed the ordinary risks of the business, but not any extraordinary risks, unless it appear that he was aware of such at the time of his employment, or that, upon learning of their existence, he continued in the employment after the lapse of a reasonable time for the defects to be remedied or removed. (*McAndrews* v. *Montana Union Ry. Co.,* 15 Mont. 290, 39 Pac. 85; Labatt on Master and Servant, Secs. 259, 270, 271, *et seq.; Geo. Pac. Ry. Co.* v. *Davis,* 92 Ala. 300, 9 South. 252, 25 Am. St. Rep. 47; *St. Louis, Ft. Scott & Wichita R. R. Co.* v. *Irwin,* 37 Kan. 701, 16 Pac. 146, 1 Am. St. Rep. 266.)

Whether the plaintiff assumed the risk in this case necessarily depends upon his knowledge or means of knowledge as to the location of switch stand No. 2; that is, whether he knew or should have known its close proximity to the track. Under the circumstances of this case this question, therefore, should be left to the jury. "No cause should ever be withdrawn from the jury unless the conclusion from the facts necessarily follows as a matter of law that no recovery could be had upon any view which could reasonably be drawn from the facts which the evidence tends to establish." (*Cain* v. *Gold Mtn. Mg. Co.,* 27 Mont. 527, 71 Pac. 1004; *Michener* v. *Fransham,* 29 Mont. 240, 74 Pac. 448; *Ball* v. *Gussenhoven, supra; Nord* v. *B. & M. Con. C. & S. M. Co., supra.*)

We think the complaint states a cause of action.

The judgment and order should be reversed, and the cause remanded for a new trial.

Per Curiam.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause is remanded for a new trial.